*664 OPINION.
Milliken:
The petition as amended raises three issues: (1) That the respondent erred in reducing petitioner’s invested capital by the amount of $76,000, representing tangible and intangible assets; (2) that he erred in reducing invested capital by the amount of taxes for previous years prorated from the date each installment was payable, and (3) that he erred in refusing to compute petitioner’s profits taxes under sections 327 and 328 of the Revenue Act of 1918.
In the original petition filed in this proceeding, petitioner asserted that the respondent erred in refusing to allow as invested capital common stock issued for intangible assets and in this connection he further urged that respondent erred in deducting from its invested capital “ the sum of $76-000 representing the amount of common *665 stock issued for good will.” In an amended petition filed at the hearing petitioner enlarges these allegations to the extent of alleging that its common stock was issued for tangible and intangible assets consisting of the services of its members, the contracts referred to in the findings of fact, and good will, and that the value on these assets was in excess of the amount disallowed by respondent.
We will first dispose of the contention with reference to the good will. Petitioner had no predecessor and therefore could have derived no good will from such a source. The only member of the group who appears to have been in business for himself was Baird and he did not enter the organization. All the other members were immediately prior to the organization of petitioner employed by large corporations. The most that can be said on this point is that the stockholders and officers of petitioner were men of ability, skill and experience, and had a large acquaintanceship with certain influential persons which they expected to capitalize in dollars and cents. Such qualifications and relationships do not constitute good will. See Providence Mill Supply Co., 2 B. T. A. 791; Northwestern Steel & Iron Corporation, 6 B. T. A. 119; and Kendrick Coal & Dock Co., 6 B. T. A. 1092.
With respect to the services of the various stockholders, it is shown that at first McCormack, Weller, and Maulé agreed to work for the company for $250 per month; that these offers were accepted by pe-tioner; and that when Joyner came into the organization his salary was fixed at $15,000 per annum and the salaries of McCormack and Weller were raised to $12,000 per annum. In fact McCormack and Maulé, instead of collecting their salaries for the first two months, left them with the company to pay for their preferred stock. So that it appears that no services were paid in for capital stock but that all such services were rendered for fixed salaries which, in so far as the record shows, constituted ample compensation.
There remains for discussion only the question whether any of the contracts referred to in the findings of fact were paid in for capital stock and, if so, what was their value, if any. At this point, it should be noted that we are not dealing with earned surplus. Every valuable contract results in income which is reflected in the profit and loss account and perhaps eventually in a surplus account. Petitioner does not assert that such profits have not been properly treated by respondent. Its complaint is that respondent has eliminated from his invested capital contracts of great value. It is at once apparent that under the circumstances of this case these contracts could enter invested capital only through the door of payment for capital stock. With the exception of the contracts mentioned in the offer of McCor- *666 mack of June 9, 1917, there is no evidence that any contract was specifically paid in for stock. We can perceive no difference between such contracts and any ordinary contract of any ordinary corporation. To hold that any contract made by a corporation through the efforts of a stockholder should be treated as paid in for capital stock would be a novel and startling proposition.
Coming to the contracts mentioned in McCormack’s offer, we find no evidence in the record that they had any value except McCor-mack’s self-serving statement that the profits therefrom “ should be respectively about $800, $4,000, $600, $800 and $600 ” or $6,800 in all. The fact that the profits might be $6,800 does not demonstrate that the contract was worth that amount at the date it was transferred to petitioner. Services had to be rendered and expenses incurred before any net gain .could be ascertained and certainly no one would pay for a contract more than the amount of such gain. The corporation did not fix any value on the contract. At the directors’ meeting of June 25, 1917, it resolved “ that in the opinion of this Board the value of the rights offered the Company by Mr. McCormack in his offer dated June 1917 is much greater than $80,000, the par value of the authorized common stock of this Company.” Taking this by and large, it can only mean that in the estimation of the directors the sum of $1,500, plus contracts which McCormack thought would result in a profit of $6,800, plus expectations, had a value of over $80,000. We must have stronger evidence than this before we can place a value on a contract which respondent denies has any value whatever. What is even more pertinent is that it appears that all that McCor-mack turned over to the corporation was a contract of sale. It does not appear that petitioner possessed the materials with which to fill che contract, nor that McCormack had entered into any contract with any producer for the materials. Until this had been done, it was impossible, especially under war conditions when prices were fluctuating, to determine what was the value of the contract, if any, at the time it was assigned to petitioner. The fact that at some future date, not shown, a larger gross profit was realized on these contracts is not evidence of their value at the date they were assigned to petitioner. Especially is this true under the facts jxist referred to. On the facts shown by the record, we can not find that the contract had any value. On this point respondent is affirmed.
Petitioner neither at the hearing nor in the brief filed in its behalf urges contentions (2) and (3). However, we will dispose of them since it does not affirmatively appear that petitioner waives them.
Contention (2) must be decided against petitioner on the authority of Russel Wheel & Foimdry Co., 3 B. T. A. 1168.
*667 With, respect to contention (3) it must follow from our decision relative to the exclusion from invested capital of the capital stock in question by the respondent, that we must accordingly find no error in his failure to compute the profits taxes under the provisions of sections 327 and 328 of the Revenue Act of 1918.
The respondent was able to determine the invested capital under section 327(a), and, from the evidence of record, we are unable to see that the case is brought within the purview of section 327 (c) and we have no evidence whatsoever relative to the requirements of section 327(d).

Judgment will be entered for respondent.